Can I ask before you get started, are you, I've just forgotten, are you donating some time? I am, Your Honor. The government has 8 of our 20 minutes. Okay. Thank you very much. You're welcome. Reneker? Good morning, Your Honor. I'm Teresa Reneker, appearing on behalf of the plaintiffs and appellants, Mr. Vaughn and Ms. Travers. The plaintiffs allege that the fiduciaries of their ERISA-governed pension plans invested the assets of the plans imprudently, causing losses to the plan and diminishing the value of the plaintiffs' retirement benefits. ERISA authorizes plan participants to bring suit on behalf of their plan under these circumstances, and the statute defines participants to include former employees who may become eligible to receive a benefit under a plan. Now, the district court dismissed the complaint on the ground that plaintiffs are not plan participants within the meaning of ERISA because they are former employees who have received distributions of their benefits under the plans. Since the district court's order, three courts of appeals have rejected this rationale. The Seventh, Third, and Sixth Circuits have held that former employees are plan participants under these circumstances. One of these decisions, Harzuski v. Guidant from the Seventh Circuit, was cited with approval by the Supreme Court in the recent decision in LaRue v. DeWolf-Boberg and Associates. The district court in this case based its decision on Kuntz v. Reis, which is a 1986 per curiam decision of this court. But Kuntz does not control this case. In Kuntz, the court held that former employees who had received lump-sum distributions of their benefits were not participants within ERISA's definition of the term. The Kuntz plaintiffs alleged that the plan's fiduciaries had lied to them about their benefits. They did not allege that the fiduciaries' misrepresentations had harmed the plan or reduced their benefits, and they would not have become entitled to additional benefits if they had prevailed on their claims. The Seventh and Third Circuits have shown that Kuntz does not apply where former employees allege imprudent investment of defined contribution plan assets, as in this case. In such a case, if the plaintiffs prevail, assets will be restored to the plan, increasing the plaintiffs' benefits. Former employees in this situation may become eligible for a benefit under the plan as a result of their claims on behalf of the plan, and so they are participants. The plaintiffs in this case are seeking to restore assets to the plans that were lost due to breaches of fiduciary duty. If they prevail, they will become eligible for additional benefits under the plans. Therefore, they are participants within the meaning of ERISA, and the district court's decision should be reversed. Since there's been a stampede in your favor since the district court ruled, it might make sense to hear from the Bay Environmental, because I think you've got the upper hand given the stampede. Thank you, Your Honor. And that probably goes for you, too. Well, I would like to point out, I'm sorry, this is Nicole Diller from Morgan Lewis on behalf of the Bay Environmental defendants, as well as individual defendants Dennis Varney and Cesar Nudy. The other circuits do not control what this panel can decide. Absolutely true, of course. But we've already taken care of one of the underlying problems in Murdoch, which was the issue of whether a past employee who's cashed out has any standing. And so we're over that hurdle. And while we can certainly, and upon occasion do from our nose what our colleagues do, this is an area where a certain degree of nationwide uniformity is valuable. And their reasoning makes sense, because their reasoning applies to a defined contribution plan, whereas Kuntz applies only to a defined benefit plan. Well, Your Honor, respectfully, in Murdoch, the court had specifically followed Kuntz and made clear that Kuntz's holding extended to profits obtained through the use of plan assets. It set forth a limited exception to Kuntz to disgorge profits from the trustee, and it was in that way all aligned with Kuntz's holding, which is what controls in this circuit. It's totally different, because when you're pursuing benefits under a defined benefit plan, you have to be going for damages. You only got what you agreed. The dollar figure that you got is the figure that you agreed to get at the end of the day. Here, the dollar figure you agreed to get is contingent upon the value of the plan as of the time you pull out. So there's a major difference. On the one hand, you are then seeking damages, extra contractual damages. But in this case, you're not. You're seeking benefits that but for, let's say, theft, but for mismanagement, but for whatever, your value would have been different and higher. That's true. And it's very telling, though, that the complaint doesn't actually assert a claim for benefits. It asserts a claim for breach of fiduciary duty. And so I think that's an admission that what is being sought is not a benefit. Otherwise, you would bring a claim. I don't understand that. Why? ERISA specifically has a provision for asserting a claim for benefits. And if what is sought here is benefits, which is critical in terms of meeting Firestone's test as to having a colorable claim to vested benefits, then the claim should be brought under Section 502A1B of ERISA, which is the provision that permits a claim for benefits. And I'd like to address the LaRue issue. In that case, the distinction that the Supreme Court was looking at is whether or not a claim can be brought, as it is here under Section 502A2 of ERISA, which is a claim for breach of fiduciary duty, on behalf of an individual instead of on behalf of the plan as a whole. But if you look at what the court was holding in that case, it was very much a specific performance idea. It wasn't broad extra-contractual relief for damages. It was whether the failure to follow specific directions that a participant had given was a breach of fiduciary duty that resulted in a contractual loss, if it was calculable. And if you look at what the court's holding in LaRue was based on, it's Section 205 of the Restatement of Trusts, which often informs our analysis in ERISA. And that section comports with ERISA Section 409. Both talk about liability for breach of fiduciary duty. The Supreme Court quoted Comment I, Failure to Make a Profit in the Restatement, which states, If a trustee commits a breach of trust, he is chargeable with any profit which would have accrued to the trust estate if he had not committed such breach of trust. If you go on to look at the restatement, Comment I, the next sentence explains why that provision of the restatement applied to the LaRue context. The very next sentence says, This rule is applicable where the trustee in breach of trust sells or otherwise disposes of trust property which it is his duty to retain, or where the trustee in breach of trust fails to purchase property which it is his duty to purchase for the trust. So what we have is much more of an equitable situation where there is a specific performance. It's a failure to, in the LaRue case, follow the investment directions that the participant had enunciated and as a result had a loss for that breach. And so that comports with Massachusetts Mutual v. Russell, which is where the Supreme Court initially addressed the remedial scheme under ERISA, and in that case, which LaRue does not modify, the Court held that Section 409 of ERISA, the one that provides the liability for breach of trust, the Supreme Court noted the section which is relevant here, provides that a fiduciary shall be subject to such other equitable or remedial relief as the Court may deem appropriate. And it noted that when Congress enacted this section of ERISA, originally there was a provision that Section 502A2 would have authorized the full range of legal and equitable remedies available in both State and Federal courts. But then when the Senate House Conference Committee finalized the operative language, the legal relief language was omitted, and instead we have the language in Section 409 that exists today, which provides for other equitable or remedial relief. And the Supreme Court in Massachusetts Mutual v. Russell held that that must be something other than the full panoply of relief that's available at law. And so the relief needs to be equitable in nature. It cannot be extra contractual damages, which is what Plaintiff is asserting here. And there's another, I think, very disturbing aspect of this case, which is that as the complaint admits, the plans here provided notice to the participants of the intended termination of the plan. ERISA Section 204H requires that a plan sponsor give notice before terminating a plan. Here, as the complaint alleges, that notice was given on April 13, 2001. The suit was not filed until two and a half years later, December 18, 2003. So the question is whether we should allow participants who have received the benefits as calculated pursuant to the terms of the plan document. Is it within the statute of limitations? It is within the statute of limitations for breach of fiduciary duty. I think it's outside the standing that is permitted by Kuntz v. Reese. Is it within the statute of limitations for this particular claim? Yes. ERISA provides a specific statute of limitations for breach of fiduciary duty, but that's different than the question of standing. What I'm addressing is the appellant's argument that there's a race to the courthouse. Do you think they had standing the day after the notice went out and lost it someplace along the line? They lost it when they received the full distribution of their benefits as calculated pursuant to the terms of the plan. They didn't do anything at all. They received the full distribution of benefits, and exactly that's the point. But they didn't take any active. There was no active participation on their part. They didn't do anything. They just sat there and they received. They just sat there knowing that their plan was going to terminate for over a year. And at that point in time, I guess they were waiting to see whether or not the market was going to rise or fall as to determine whether or not to bring a claim. But fiduciaries are not to be held liable for market fluctuations. They're liable for breach of fiduciary duty. And if these participants thought that they had a breach. That's a defense to an action, not a dismissal of a standing. That's a claim of no standing. What it addresses is the appellant's claim that there's going to be a race to the courthouse if this Court changes the ruling in Kuntz and holds that former participants who have received a full distribution of their benefits as calculated under the terms of the plan. That's where the case has a flaw. The claim is they didn't receive their full benefits. Then their claim should have been brought under Section 502A1B of ERISA, which is a claim for benefits. But they acknowledged that they received the full distribution of their benefits and now in response to the district court's ruling, they're trying to change the complaint. Their complaint never alleged that they didn't receive full distribution of benefits. Their complaint alleged only a breach of fiduciary duty claim, which brings it squarely within Kuntz. And respectfully, an en banc rehearing. Kagan. I mean, how do you get, how do you make that leap? That they didn't assert a claim for benefits? Well, you just say they didn't, the complaint didn't allege benefits. They waited around. They took distribution, and therefore, what, it made it into a defined benefit plan? I don't think that the distinction between a defined benefit plan and a defined contribution plan is necessarily what's at essence here. If you look at Hughes v. Jacobson, the Supreme Court case that I think most directly addresses the defined benefit versus defined contribution plan, a defined benefit plan, the risk is on the employer. A defined contribution plan, the risk is on the employee in terms of what's the benefit amount going to be. Well, of course, but that assumes that you don't have, that all things are equal and the creeks haven't risen. And here they're saying all things aren't equal because there was a breach of fiduciary duty. So, of course, the employee takes the risk, but he doesn't take the risk of unprofessional behavior in violation of a fiduciary duty. Right. I'm certainly not suggesting that ERISA does not permit an employee to bring a claim for breach of fiduciary duty. It does. Very clearly, Section 502A2 allows a participant to bring a claim for a breach of fiduciary duty that results in investment losses. The question is when. When does the participant bring that claim? And Kuntz v. Reese squarely addresses that a claim for extra-contractual damages, which is the only way that you can look at investment losses where you've received your full benefit, cannot be brought by a former employee. And the Supreme Court ---- Kagan in the same point, doesn't that beg the question? You keep asserting full benefit was paid, whereas the allegation ---- I don't know how this pans out. I mean, if it got standing, maybe you win hands down on the merits. But the allegation is they did not get the full fair benefit to which they were entitled on account of breach of a fiduciary duty. And that, it seems to me, fits squarely within the Firestone definition, when you have a contribution plan rather than a defined benefit plan. You can't possibly make that claim with a defined benefit plan, right? Because the dollars were set, fixed, known in advance, and you got it. So you may have ---- any other claim you've got about it is something else. But there's ---- but this plan actually defines what the individual's individual benefit is, which is the value of the account at the time of taking the distribution. That's true. And I need to share my time with my co-counsel. Sure. I'm sorry. You have a question? No. No, I'm just wondering whether we should hear from the Secretary next. Oh, we'll come back to him. Good morning. May it please the Court. Bernard Gelhar here on behalf of Appley's FSC Securities Corporation and Gerald Weinberg. First, I'd like to say my argument may be made briefer by the fact that I do join in the comments made by Counsel for Bay Environmental. It's not questioned here. The facts are few. They're undeniable. They're undisputed. The plans were terminated. The assets were distributed to the plan participants. And the employer, in fact, is defunct at this point. So there's no question that there's no possibility of returning to covered employment. My clients are FSC Securities Corporation, a securities broker-dealer, and one of their registered representatives, Gerald Weinberg. In essence, what they're accused of here, within the framework of ERISA, is professional negligence in connection with the investment of planned assets. I would submit that the question here, under the law of the circuit, is benefits versus damages, not this distinction between defined benefit plan versus defined contribution plan, which I think is a red herring under the law of this circuit. In essence, this Court clearly said that plan participants or former participants who had received their full distribution of benefits under the plan lacked standing. That was cited with approval for that proposition by the Supreme Court in Firestone. But that's where the little hooker is. The claim is they didn't receive their full benefits. I understand the semantics, but I would submit that it's just that, that really what they're seeking are damages at bottom. They're not seeking benefits. One thing that I could move to now is that this Court has acknowledged specific and very limited exceptions to the Kunst doctrine, one being in Murdoch the self-dealing exclusion. That's not alleged here. It's not at issue. Another one being the exception for claims under the Pension Annuitants Protection Act. That was acknowledged in Kaye's. Another one, which I think is fairly important here, is in McBride. In the McBride case, the Court acknowledged exceptions for whistleblower claims. There's no whistleblower claim here. It's not applicable. But I think one thing that's key there is that that was an employee stock ownership plan. It was a defined contribution plan, not a defined benefits plan. So I would submit that the fact that that issue never got raised at that point leads to the conclusion that Kunst is still controlling in this case. Kagan. Now, Kunst is a case in a way of limited applicability in that, as I read it, the issue there was failure to disclose. They got their full benefits. Nobody denied that. I understand that there is that distinction there, but the Kunst doctrine has been applied in other cases as well. For example, in the Fifth Circuit in Yancey, the Tenth Circuit in Mitchell, and in Summers again by the Fifth Circuit. The Fifth Circuit, they're equating benefits to a claim for benefits to a claim of the  I know that's one side of the spectrum. The other side of the spectrum being, you know, unassertainable amount of damages. I think here, regardless of the attempts by the appellants to frame the claim for one of benefits, I think they're clearly damages here. It's not assertainable. It's not the same as the market value of an untraded stock. It's much more akin to damages that will be established by expert testimony as to what the plan, how it should have been invested. I would submit that that is far from a question of just straight benefits, and under the law as it stands in the circuit today, I would submit as well that Kunst controls and requires the affirmance of the district court's decision. If there are no further questions. Thank you. I think so. Okay. Ms. Hopkins. Good morning, and may it please the Court. My name is Elizabeth Hopkins, and I'm here on behalf of the Secretary of Labor, as amicus curiae, in support of the plaintiffs. I think I'd like to make a couple of points, and the first one being that this case is really not distinguishable from LaRue v. DeWolf, the Supreme Court case. In the way that counsel for Bay Environmental says that it was. In that case, the plaintiff in the case was alleging that there was a breach of fiduciary duty, that that breach caused the assets in his account to be invested improperly, that had they been invested alternatively, they would have earned more money. That money would have gone back to the plan and eventually back to him on payout. It's essentially the same kind of claim that's being raised here. The plaintiffs in this case, Mr. Vaughn and Ms. Travers, are saying that there were breaches of fiduciary duty with regard to the prudence of the management of the plan's assets in this case, that that led to losses to the plan, investment losses, that if those losses are recovered, that they will be allocated to a resulting trust, essentially, and then paid out to the participants and beneficiaries in the case. It's not, you know, the amount of the benefits is not unassertainable in any sense, any more than the amounts in the LaRue case were unassertainable. It will require, obviously, some expert testimony about what would have happened had an alternative investment taken place, but that hardly makes it unassertainable. And I guess the second point that I want to make about this is that the plan, on this point that the plan actually defines what the benefit is and that it can't allow the plaintiffs to bring this kind of suit for breach of fiduciary duty because the plan says that whatever we pay you out with, whatever we say your account balance is, you know, at the time of termination, that's all you're entitled to. That can't be the case because there's a provision in ERISA section 410, which is 29 U.S.C. 1110, which says that you can't exculpate, you can't have exculpatory clauses letting fiduciaries off the hook, and that's essentially what this would amount to. Third, I think on the point that the plaintiffs didn't raise this claim properly and that they haven't, you know, made it clear what it is they're asking for and that they have a colorable claim to benefits, I would say this, number one, this is not a claim for benefits. They've brought a claim, the plaintiffs in this case, under a provision, section 502A2, which allows participants in a plan to bring a claim for fiduciary breaches that cause losses to the plan. And that's what they're saying, this caused losses to the plan. The question under Kuntz, which was adopted essentially by the Supreme Court in Firestone, is, well, are they alleging a colorable claim to benefits? Not is this case, is this claim itself a claim for benefits. Obviously it's not. It wasn't brought under the provision of ERISA that allows you to bring a claim for benefits. But what they're saying is if we're successful in our claim for breach of fiduciary duty, we will be entitled to additional benefits. And this is abundantly clear, I think, from the complaint, the amended complaint that was filed in the case. In fact, the prayer for relief on page, it's ER13, paragraph C, asks the court to order the establishment of a successor trust for benefits owing to participants and beneficiaries whose plan accounts have been distributed. So it's quite clear, I think, in this case that this case is not only is Kuntz, you know, is Kuntz distinguishable, but this case is fully consistent with the court's holding in Kuntz, which is that if a former employee, and that's what these plaintiffs are, if a former employee has a colorable claim to benefits, then they are participants within the meaning of the relevant statutory term, who may sue under 502A2 for breach of fiduciary duty to recover losses that occurred to the plan because of those breaches. Here, you know, for the reasons I've said, that's exactly what the plaintiffs are alleging, are alleging, that the breaches with regard to the mismanagement of plan assets, again, a trust law principle that makes the fiduciaries of a plan liable to act with the utmost prudence and loyalty in managing the plan's assets. Drawn directly, really, from the trust laws, the Supreme Court has pointed out on many occasions that whether the breach of those duties that caused losses to their two ERISA retirement plans and that caused eventual losses on the payout of the balances in those plans, whether they can sue to recover those plans under what is the Federal law enacted for the protection of retirement benefits. It's not surprising that the Supreme Court has all but resolved this issue and that three courts that have acted since the briefing in this case on, you know, on very closely analogous facts have all held that plaintiffs in such a situation may sue for benefits. If the Court has no further questions, I'll sit down. Thank you. Okay, was there anything that the EOC said that, I mean, excuse me, the Secretary said that you would like to respond to? Yes, just very briefly, in terms of whether or not LaRue is directly on point, Footnote 6 of LaRue notes that the petitioner withdrew funds following the commencement of the litigation. This Court has always held that if you have a benefit in your account at the time of the inception of the litigation, that is when you examine standing. And in that footnote, the Supreme Court actually stated that while his withdrawal of funds from the plan may have relevance to the proceedings on remand, we deny the issue because this is not moot. Note 3 specifically states that the Court is not deciding whether or not the petitioner asserted his rights in a timely fashion. So I think while LaRue has some bearing on whether an individual may assert a claim under 50282 of ERISA that doesn't necessarily inert to the plan as a whole, it certainly does not address the question that's before the Court here. And then with respect to the issue of whether the exculpatory provision of ERISA governs, what my comment was was not that the plan's definition of what a participant's benefit is, is exculpatory, it's what is the contractually defined right of the participant. And unless the Court has further questions, that's all I have. Okay. Thank you, counsel, all of you, for your argument. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Duffy